```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRUSTEES OF THE LOCAL 1034                      REPORT AND
PENSION TRUST FUND,                             RECOMMENDATION
                         Plaintiffs,
              - against –                       19-CV-4937 (AMD) (JO)
MICHAEL J. QUINN
FUNERAL SERVICE, INC., et al.,
                         Defendants.
----------------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

The Trustees of the Local 1034 Pension Trust Fund (the "Fund") have sued defendants Michael J. Quinn Funeral Service, Inc. ("Quinn") and Cortege, LLC ("Cortege") for damages arising from Quinn's alleged failure to make timely payment of its withdrawal liability to the Fund. *See* Docket Entry ("DE") 1 (Complaint). The defendants never responded to the Complaint, and the Trustees now seek a default judgment. *See* DE 16. Upon a referral from the Honorable Ann M. Donnelly, United States District Judge, I now make this report and, for the reasons set forth below, respectfully recommend that the court grant the motion and award judgment against all defendants, jointly and severally, in the total amount of $154,936.87 (consisting of $117,693.00 in withdrawal liability; $6,842.32 in interest through January 30, 2020; $23,538.60 in liquidated damages; $4,553.50 in attorneys' fees; and $2,309.45 in costs).

I.  Background

The Fund is a jointly-administered, multi-employer, labor-management trust fund established and maintained under collective bargaining agreements and federal law. It is also, for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 4201, *et seq.*, both a defined employee benefit plan and a multi-employer plan. 29 U.S.C. §§ 1002(1)-(3), (37)(A); *see also* DE 16-8 (Declaration of Sharon Huang) ("Huang Dec.") ¶ 3. Quinn and Cortege are both New York corporations wholly owned by an individual non-party named Michael J. Quinn. *See* Complaint

¶¶ 6-9. Quinn entered into a collective bargaining agreement with Local 813 of the International Brotherhood of Teamsters that required it to remit contributions to the Fund on behalf of covered employees. *See* Complaint ¶¶ 6, 13; 29 U.S.C. § 1145; *see also* Huang Dec. ¶ 4; DE 16-9 (Collective Bargaining Agreement) ("CBA").

As of January 31, 2019, Quinn ceased all covered operations, ending its obligation to contribute to the fund, and completely withdrew from the fund. In a letter dated March 5, 2019, the Fund notified Quinn that by taking such action it had incurred withdrawal liability under ERISA, as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. § 1381, *et seq*. On that basis, the Fund demanded a total of $117,693.00 to be paid in 240 monthly installments of $445.00 beginning no later than May 5, 2019, notified Quinn of its rights under ERISA to seek review and initiate arbitration, and warned that failure to make timely payment would constitute a default under the statute and entitle the Fund to immediate payment of the entire amount of withdrawal liability plus accrued interest. *See* Complaint Ex. A (the "Demand Letter"). Having received no payment, on May 7, 2019, the Fund sent a letter by certified mail notifying Quinn that it was in default of its obligations and had sixty days to cure that default. *See* Complaint Ex. B (the "Default Letter"). On August 27, 2019, the Fund sent a letter by certified mail stating that as a result of Quinn's failure to cure the default, the entire amount of $120,449.92 in withdrawal liability plus accrued interest was immediately due and owing. *See* Complaint Ex. C. Quinn has made none of the demanded payments to date and has not initiated timely arbitration proceedings. *See* Complaint ¶¶ 13-19; 29 U.S.C. § 1401(b)(1); *see also* Huang Dec. ¶¶ 6-8.

The Trustees filed the Complaint on August 29, 2019, asserting withdrawal liability claims against both Quinn and Cortege. *See* Complaint ¶¶ 12-26.[1] They served process on both defendants on August 29, 2019. DE 6; DE 7. Neither responded and the Clerk entered each defendant's default on November 25, 2019. *See* DE 11; DE 13. The Trustees filed the instant motion for default judgment on January 30, 2020. *See* DE 16. In support of their motion, the Trustees submitted the declarations of Fund administrator Sharon Huang and their counsel Neil Shah, each with supporting exhibits. *See* Huang Dec.; DE 16-2 ("Shah Dec."). The court referred the motion to me by order dated January 30, 2020.

I held a damages inquest on April 22, 2020. The Trustees appeared through counsel and the defendants' owner, Michael J. Quinn, also attended but did not engage counsel to appear on behalf of the corporate defendants. The Trustees offered no testimony or other new evidence in support of the motion. I discussed with the Trustees' counsel my concerns with their calculations of interest, attorneys' fees, and costs and afforded the Trustees an opportunity to respond to those concerns in a supplemental submission. *See* DE 25 (minute order); DE 26-1 (transcript) ("Tr.") at 2-3, 5-6. The Trustees filed their supplemental letter, together with exhibits, on May 14, 2020. *See* DE 26 ("Supplemental Letter").

II.   Discussion

    A.   Default

Although a court accepts as true all well-pleaded allegations against a defaulting defendant for purposes of determining liability, a default is not an admission of damages, which must be established in a separate evidentiary proceeding; even where a party has defaulted, it may still contest

---

[1] The Complaint also included two additional counts against "Doe" defendants whom the Trustees have never identified or served. *See* Complaint ¶¶ 27-34. I therefore deem those claims abandoned and respectfully recommend that the court dismiss them.

3

the amount of damages awarded to a plaintiff. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., Greyhound Exhibitgroup*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974)); *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010).

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *House v. Kent Worldwide Mach. Works., Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Even when the defendant defaults, damages must be based on admissible evidence. *House*, 359 F. App'x at 207. Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

    B.    <u>Liability</u>

        1.    <u>Quinn</u>

The MPPAA requires an employer withdrawing from a multiemployer plan to continue funding its proportionate share of the plan's unfunded vested benefits in order to "relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan." *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988) (quoting H.R. Rep. No. 96–869, pt. 1, at 67 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2918, 2935). If an employer who is required to contribute to a plan withdraws from that plan, the employer becomes subject to withdrawal liability. *See* 29 U.S.C. § 1381(a). "An employer 'completely withdraws' from a plan by '(1)

4

permanently ceas[ing] to have an obligation to contribute under the plan or (2) permanently ceas[ing] all covered operations under the plan.'" *Trs. of Local 813 Pension Tr. Fund v. Highbuilt Contracting Corp.*, 2015 WL 1529677, at *4 (Mar. 31, 2015) (citing 29 U.S.C. § 1383(a)). The Complaint adequately alleges, and Quinn's default establishes, that Quinn permanently ceased all covered operations under the plan as of January 31, 2019, and thereby incurred withdrawal liability. *See* Complaint ¶ 14.

In order to recover for withdrawal liability from an employer, a plan must notify the employer of the amount of liability, include with the notice a schedule for payment, and demand payment in accordance with the included schedule. *See Levy Bros. Frocks*, 846 F.2d at 881; *Amalgamated Lithographers of Am. v. Unz & Co.*, 670 F. Supp. 2d 214, 223 (E.D.N.Y. 2009) (citing 29 U.S.C. § 1399). An employer may, within 90 days of receipt of the notice, request review of the withdrawal determination; any unresolved dispute concerning the plan's determination of liability must be addressed through arbitration. 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)(1). If no arbitration hearing is initiated within the statutorily designated timeframe, then the plan's determination of the withdrawal liability becomes final and binding and must be paid in accordance with the schedule provided by the plan. 29 U.S.C. § 1401(b)(1). No supporting documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration. *See, e.g.*, *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 613 (E.D.N.Y. 2017) ("[W]here, as here, the damages sought consist, in part, of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the discretion to 'adopt [...] the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated.'") (quoting *LaBarbera v. United Crane & Rigging Servs., Inc.*, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011)); *see also Trs. Of Local 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011) (citing 29 U.S.C. § 1401) (employer's

5

failure to demand arbitration regarding its withdrawal liability to multiemployer employee pension benefit plan barred it from challenging plan trustee's calculation of amount of unpaid withdrawal liability); *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 9-10 (E.D.N.Y. 2001) ("ERISA is a 'pay-first-question-later' statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability.").

The Complaint adequately alleges, and Quinn's default establishes, that Quinn completely withdrew from the Fund and was properly notified of its withdrawal liability, payment obligations, and right to request review of the assessment and initiate arbitration. *See* Complaint ¶¶ 14-15 & Ex. A. In addition, the complaint alleges that after Quinn failed to make timely payment of its withdrawal liability, the Fund gave the company 60 days to cure. *See id.* ¶¶ 16-17 & Ex. B. Quinn nonetheless failed to remit any amounts in satisfaction of the withdrawal liability or cure its default and likewise failed to initiate arbitration proceedings in accordance with statutory framework. *See id.* ¶¶ 18-19 & Ex. C. Those facts suffice to establish Quinn's liability on the first cause of action.

  2. Cortege

The Trustees seek to hold Cortege jointly and severally liable with Quinn on the ground that both corporations are within the common control of their sole owner, Michael J. Quinn. *See* Complaint ¶¶ 23-24. Because the purpose of withdrawal liability "is to fix liability upon those who were responsible at the time of withdrawal for continued funding," multiple entities may be held liable for the withdrawal obligations of one employer if they are shown to be under "common control" within the meaning specified in Treasury Department regulations. *See Jaspan v. Certified Indus., Inc.*, 658 F. Supp. 332, 334 (E.D.N.Y. 1986); *see Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 86 (2d Cir. 1997); 29 U.S.C. § 1301(b)(1); 26 C.F.R. §§ 1.414(c)-1 through 1.414(c)-5.

Under the applicable regulations, businesses are under "common control" if they are members of, among others, a "brother-sister" group of businesses. A "brother-sister" group of

businesses under common control must be controlled by the same five or fewer persons owning at least 80 percent of the shares of each corporation, with at least 50 percent of the shareholder's ownership interests in each corporation identical. 29 C.F.R. § 1.414(c)–2(c); *see Ret. Plan of Nat'l Ret. Fund v. Lackmann Culinary Servs., Inc.*, 2011 WL 3366354, at *4 (S.D.N.Y. July 29, 2011).

The Complaint adequately pleads, and Quinn's default establishes, that Michael J. Quinn controls both corporate defendants. I therefore respectfully recommend that the court find Cortege liable on the Complaint's second cause of action.

C. Relief

A fiduciary who successfully sues to enforce the provisions of a plan in the circumstances here is entitled to recover the unpaid contributions, interest on those contributions, an additional amount of liquidated damages equal to the greater of the interest or 20 percent of the unpaid contributions, and litigation costs including reasonable attorneys' fees. *See* 29 U.S.C. § 1132(g)(2). I address each remedy in turn below.

1. Damages

The Trustees seek to recover unpaid contributions in the form of the withdrawal liability payments that were still outstanding, in the amount of $117,693.00. The record need not support the Trustees' calculation of withdrawal liability because Quinn's liability arises from its failure to respond to earlier demands, and as a result, the amount of withdrawal liability demanded became due and owing. *See, e.g., Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, 2009 WL 982424, at *4 (E.D.N.Y. Apr. 10, 2009). The defendants have thus waived their right to contest the amount of withdrawal liability, and I therefore respectfully recommend an award of $117,693.00.

2. Interest

The Trustees seek $7,244.66 in interest on the total outstanding withdrawal liability from May 5, 2019, the due date of the first payment that was not timely made in full, through January 30,

2020, the date the Trustees filed the instant motion. *See* Huang Dec. ¶ 13, DE 16-17 ("Interest Calculations"). ERISA provides for such relief. *See* 29 U.S.C. §§ 1399(c)(5); 1132(g)(2). Interest on unpaid contributions is determined by using the rate provided under the plan, or if none, the rate prescribed under 26 U.S.C. § 6621. *Id.*; *see also* 29 U.S.C. § 1399(c)(6); 29 C.F.R. § 4219.32.

The Fund's Withdrawal Liability Procedures, as applicable at all relevant times, provide that if withdrawal liability payments are not made when due, "interest on the payment shall accrue from the due date until the date on which the payment is made[.]" DE 16-16 ("Withdrawal Procedures"), § 10; *see* Huang Dec. ¶ 13; Tr. at 4-5. The Fund notified Quinn of withdrawal liability on March 5, 2019, and demanded payment starting 60 days thereafter; the due date of the first missed payment was therefore May 5, 2019. *See id.*; *see also* Complaint ¶ 15 & Ex. A. The Trustees properly seek interest from that date through the date of their motion, January 30, 2020.

The Fund's plan also permissibly establishes the interest rates for withdrawal liability as the greater of the rate established by the Pension Benefit Guaranty Corporation ("PBGC") or a rate three points above the prime rate. *See* Huang Dec. ¶¶ 12-13; DE 16-15 (Agreement and Declaration of Trust), Art. V, § 5.5(p); *see also* Tr. at 6:6-7:22. Both PBGC's annual rate and the prime rate varied during the relevant time period from 4.75 to 5.5. *See* Overdue or Defaulted Withdrawal Liability, www.pbgc.gov/prac/interest/oodwl.html (last visited June 11, 2020); Prime Rate Interest History, http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm (last visited June 11, 2020). Thus, the prime rate plus three percent is the greater rate. Based on this rate, I respectfully recommend an award of $6,842.32 in interest accrued from May 5, 2019 through January 30, 2020 as summarized in the following table.[2]

---

[2] I calculate interest using the following formula: Principal x (annual rate/365) x days in period = accrued interest. That method produces a slightly lower interest amount than the Trustees claim for two reasons. First, the Trustees appear to use, without explaining the basis for doing so, a

| Start Date | End Date | Days in Period | Annual Rate | Principal | Accrued Interest |
|---|---|---|---|---|---|
| 5/5/2019 | 7/30/2019 | 86 | 8.50% | $117,693.00 | $2,357.08 |
| 7/31/2019 | 9/17/2019 | 48 | 8.25% | $117,693.00 | $1,276.89 |
| 9/18/2019 | 10/29/2019 | 41 | 8.00% | $117,693.00 | $1,057.62 |
| 10/30/2019 | 1/30/2020 | 92 | 7.25% | $117,693.00 | $2,150.72 |
| Total | | | | | $6,842.32 |

3. Liquidated Damages

Both the Agreements and ERISA provide for an additional award of liquidated damages equal to the greater of the accrued interest or 20 percent of the unpaid contributions. *See* 29 U.S.C. § 1332(g)(2)(C); Withdrawal Procedures § 11. The amount of unpaid contributions for withdrawal liability is $117,693.00; 20 percent of that amount is $23,538.60, which is more than the interest on the unpaid contributions. I therefore respectfully recommend an award of liquidated damages in the amount of $23,538.60.

4. Attorneys' Fees

ERISA mandates an award of reasonable attorneys' fees. 29 U.S.C. § 1132(g)(2)(D); *Finkel v. Nat'l Maint., Inc.*, 2013 WL 5533066, at *7 (E.D.N.Y. Oct. 4, 2013). The Trustees seek

---

methodology that rounds the accrual periods into quarters and months as well as days and assumes that a year has 360 days rather than 365. Absent a legal basis for doing so or any explanation of the difficulty in using a more precise method, I reject that approach. Second, the Trustees incorrectly conflate distinct methods for determining the applicable interest rates by assuming that the prime rate and the published PBGC rate are necessarily the same. *See* DE 26 at 1; *see also Bd. of Trs. of the Private Sanitation Union Local 813 Pension Fund v. Metro Demolition Contracting Corp.*, 2010 WL 5621275, at *4 (E.D.N.Y. Sept. 17, 2010) (report and recommendation), *adopted*, 2011 WL 197588, at *4 (E.D.N.Y. Jan. 20, 2011) (noting that interest calculated on withdrawal liability is either "the rate established by [PBGC] . . . [or] the prime rate plus 3%" and finding that because "[b]oth the PBGC and prime rates were 3.25% during the relevant time period ... the prime rate plus 3% is greater than the flat PBGC rate, [and] it must be used to calculate the interest."); *Trs. of Local 1034 Pension Trust Fund v. N. Cancro, Inc.*, 2019 WL 7580098, at *4 (E.D.N.Y. Dec. 18, 2019) (report and recommendation), *adopted*, 2020 WL 207902 (E.D.N.Y. Jan. 14, 2020) (using the prime rate plus 3%, which was greater than the flat rate established by PBGC to calculate interest).

9

reimbursement of $7,643.75 in attorneys' fees for 34.75 hours of work. *See* DE 26-4 (billing records). As explained below, I recommend awarding a lower amounr.

Courts in this circuit assess fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing cases).[3] A reasonable hourly rate is the rate a "reasonable, paying client would be willing to pay." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation omitted); *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 420-21 (2d Cir. 2010); *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010). Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Ferrara v. All Am. Trucking Servs., Inc.*, 2012 WL 1042936, at *7 (E.D.N.Y. Feb. 17, 2012) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (report and recommendation), *adopted*, 2012 WL 1041820 (E.D.N.Y. Mar. 28, 2012)). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). The absence of contemporaneous records precludes

---

[3] I use the term "lodestar" only for ease of reference. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 n.4 (2d Cir. 2008); *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011) (describing the lodestar as producing a "presumptively reasonable fee" and noting that failure to calculate it as a starting point in determining a fee award is "legal error").

any fee award in all but the most extraordinary of circumstances. *Scott v. City of N.Y.*, 626 F.3d 130, 133-34 (2d Cir. 2010). Inadequate documentation warrants reduction of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *6-7 (E.D.N.Y. July 22, 2005).

The Trustees seek reimbursement for the work of their counsel and support staff at the following hourly rates: $400 for partner Anthony Cacace ("Cacace"); $325 for associate Neil Shah ("Shah"); $200 for staff attorney Nanci Hamilton ("Hamilton"); and $100 for legal assistant Megan Cutaia ("Cutaia"). *See* Shah Dec. ¶¶ 11-13, 14-16, 18, 20; DE 16-1; DE 16-1 (supporting memorandum) at 11; DE 26. Each of these rates is at or exceeds the high end of what is reasonable.

This court normally approves the following ranges of hourly rates for attorneys in comparable cases: $300 to $400 for partners, $200 to $300 for senior associates, $100 to $200 for junior associates, and $70 to $100 for support staff. *See*, *e.g.*, *N. Cancro, Inc.*, 2019 WL 7580098, at *5. Consistent with that practice, I respectfully recommend awarding fees based on the following hourly rates: $360 for Cacace, $250 for Shah, $175 for Hamilton, and $95 for Cutaia. *See id.* at *6-7 (awarding the same rates to the same professionals).

The Trustees seek reimbursement for 34.75 hours of work by their attorneys and support staff, including 1.5 hours by Cacace, 6.75 hours by Shah, 22 hours by Hamilton, and 4.5 hours by Cutaia. *See* DE 26-4. The claimed amount exceeds the hours typically approved in comparable ERISA default cases, and the Trustees have provided no reason why this case deviates from that norm. *See Highbuilt Contracting Corp.*, 2015 WL 1529677, at *8 (reducing the number of hours requested by Cacace and other counsel and support staff from 35.25 to 19.39); *Trs. of the Local 813 Pension Tr. Fund v. Canal Carting, Inc.*, 2014 WL 843244, at *17-18 (E.D.N.Y. Mar. 4, 2014) (approving 7.5 hours of work by Cacace and one hour of litigation support); *Trs. of Local 813 Ins. Tr. Fund v. Bradley Funeral Serv., Inc.*, 2012 WL 3871759, at *6-7 (E.D.N.Y. Aug. 10, 2012) (report and

11

recommendation) (approving 7.75 hours of work by Cacace and 2.25 hours of paralegal work), *adopted*, 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012); *see also Crossbay Seashell Fish Mkt., Inc.*, 2019 WL 4418884, at *7 (E.D.N.Y. Aug. 30, 2019) (finding 27.5 hours spent by counsel and support staff on a straightforward ERISA default case to be reasonable) (citing *Gesualdi v. Fortunata Carting, Inc.*, 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case.")); *UFCW Local 174 Pension Fund v. Int'l Glatt Kosher Meat Processing Corp.*, 2018 WL 3742731, at *9 (E.D.N.Y. May 15, 2018) (report and recommendation) (finding 18.75 hours spent by counsel and support staff on an ERISA default action involving withdrawal liability to be reasonable), *adopted*, 2018 WL 3435059 (E.D.N.Y. July 13, 2018).

In addition to the overall number of hours being excessive under the circumstances, the billing records reflect two other reasons to reduce the claimed fee. First, the Trustees' counsel have billed for their time in increments of fifteen rather than six minutes. *See La Barbera v. Pass 1234 Trucking, Inc.*, 2007 WL 2908175, at *7-8 (E.D.N.Y. Sept. 28, 2007) (reducing claimed fee by 15 percent in part because attorney used 15-minute increments).

Second, the Trustees' counsel have billed unreasonable hours for simple tasks, including performing the same tasks on multiple occasions. *See Jemine v. Dennis*, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing claimed fee by ten percent because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); *Struthers v. City of New York*, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing claimed fee because the hours requested for responding to motion papers were "excessive"). For example, Cacace billed 15 minutes on October 8, 2019, for a task described as "review order re default," another 15 minutes on November 11, 2019 to "review complaint and other court filings," and another 15 minutes on November 25, 2019 to "review clerk's entry of default." Hamilton billed for 15 minutes on October 9, 2019, to

"review court's docket entry" and "calendar deadline," and did so again on October 18, 2019, and yet again on January 2, 2020. Moreover, counsel appear to have billed a total of 16.75 hours for the work related to preparing and filing a straightforward motion for default judgment. *See* DE 26-4.

One acceptable method for reducing the billable hours from a fee application in such circumstances is for the court to impose an "across-the-board percentage" cut of the total amount of time claimed. *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987); *see also Finkel v. Hall-Mark Elec. Supplies Corp.*, 2009 WL 3401755, at *12 (E.D.N.Y. Sept. 25, 2009) (report and recommendation) (reducing claimed hours by 40 percent), *adopted in pertinent part and rejected in part*, 2009 WL 3401747 (E.D.N.Y. Oct. 21, 2009); *LaBarbera v. Almar Plumbing & Heating Corp.*, 2008 WL 3887601, at *8 (E.D.N.Y. Aug. 20, 2008) (reducing claimed hours by 60 percent). Under the circumstances of this case, and in the absence of any explanation why counsel could not have worked as efficiently here as they have in comparable cases, I respectfully recommend reducing the claimed hours by 30 percent, to achieve a total number of compensable hours of 24.33, which is within a reasonable range. Accordingly, as set forth in the following chart, I respectfully recommend a fee award in the total amount of $4,553.50.

| Professional | Hourly Rate | | Hours Worked | | Adjusted Fee |
| --- | --- | --- | --- | --- | --- |
| | Claimed | Adjusted | Claimed | Adjusted | |
| Cacace | $400 | $360 | 1.5 | 1.05 | $378.00 |
| Shah | $325 | $250 | 6.75 | 4.73 | $1,181.25 |
| Hamilton | $200 | $175 | 22 | 15.40 | $2,695.00 |
| Cutaia | $100 | $95 | 4.5 | 3.15 | $299.25 |
| Total | | | 34.75 | 24.33 | $4,553.50 |

5.  <u>Costs</u>

ERISA also provides for the recovery of costs associated with the litigation. *See* 29 U.S.C. § 1132(g)(2)(D). The Trustees request reimbursement of the following expenses, all of which they have properly documented, in the total amount of $2,309.45: the court's $400 fee for filing the

13

complaint, $651.40 for the process server fees, $205.92 for mailing and delivering court orders and motion papers, $11.70 for copying and printing costs, $996.00 for computerized Westlaw Research, and $44.43 for using the Database Search Service. *See* Shah Dec. ¶¶ 22-25; DE 16-6; DE 16-7; DE 26-4.

"Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable." *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008); *see also* 28 U.S.C. § 1920. "Electronic research costs are recoverable if they have not already been factored into the attorneys' hourly rate." *See Nat'l Integrated Grp. Pension Plan v. Dunhill Food*, 2014 WL 887222, at *11 (E.D.N.Y. Jan. 6, 2014) (citing *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 274, 286-87 (E.D.N.Y. 2008)); *see also Arbor Hill*, 369 F.3d at 97-98 (2d Cir. 2004). Although the Trustees' counsel initially sought to be reimbursed both for the time spent on electronic research and the cost of such research, it now appears they have excluded the former from the billed hours for which they seek an award. *See* DE 16-6; DE 26-4. I therefore respectfully recommend that the court award the Trustees $2,309.45 in litigation costs.

III.  Recommendation

For the reasons set forth above, I respectfully recommend that the court enter judgment against the defendants jointly and severally in the total amount of $154,936.87 (consisting of $117,693.00 in withdrawal liability; $6,842.32 in interest through January 30, 2020; $23,538.60 in liquidated damages; $4,553.50 in attorneys' fees; and $2,309.45 in costs).

IV.  Objections

I direct the plaintiff to serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service no later than June 15, 2020. Any objections to this Report and Recommendation must be filed no later than June 25, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the

14

district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

      SO ORDERED.

Dated: Brooklyn, New York
       June 11, 2020

                                                    /s/
                                     James Orenstein
                                     U.S. Magistrate Judge